IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCANDREW, | No. 4:22-CV-00834 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| NORTHUMBERLAND COUNTY, BRUCE KOVACH, individually and in his official capacity, SAMUEL J. SCHICCATANO, JOSEPH M. KLEBON, KYMBERLY L. BEST, JAMES HOSHKIN, and JOHN DOES 1-6., | |
| Defendants. | |

**MEMORANDUM OPINION**

**JANUARY 25, 2023**

Meghan McAndrew ("Ms. McAndrew"), the deceased daughter of Plaintiff Timothy McAndrew ("Mr. McAndrew"), committed suicide while detained at the understaffed Northumberland County Jail (the "Jail"). While Ms. McAndrew was detained, she was placed on suicide watch and to be checked on every fifteen minutes. However, she was left alone and unsupervised for an hours-long period, during which she ended her own life.

Mr. McAndrew has since filed suit on his daughter's behalf, alleging several causes of action against Northumberland County, its Commissioners, and several yet-unnamed correctional officer employees of the jail. His Complaint alleges that

the Defendants' failure to properly staff the jail violated Ms. McAndrew's constitutional rights and a number of Pennsylvania state laws. Defendants move to dismiss the Complaint for failure to state a claim. For the purposes of this Court's jurisdiction, the Eighth Amendment constitutional violation claim is the most important. After analyzing the Eighth Amendment claim within the appropriate framework, the Court finds that the Complaint must be dismissed. While the Court regrets Ms. McAndrew's premature demise and the challenges this tragedy has likely presented to her father, the Court must abide by the law, and the Complaint—as currently drafted—does not survive the Rule 12(b)(6) standard.

## I.  BACKGROUND

### A.  Factual Background[1]

Mr. McAndrew is the father of the deceased Ms. McAndrew.[2] On February 6, 2022, pursuant to a bench warrant, Ms. McAndrew was taken into custody and housed at the Jail.[3] Ms. McAndrew was a known drug user with a history of drug offenses in Northumberland County, including pending drug charges at the time she was apprehended and taken to the Jail.[4] Upon intake, Ms. McAndrew was placed on suicide watch due to the likelihood she would be "detoxing" from illicit substances during the early stages of her incarceration; she was not placed in a cell equipped

---

[1]  Facts set forth in this section are stated as they have been alleged in the Complaint (Doc. 1).
[2]  *See* Doc. 1 ¶ 2.
[3]  *Id.* ¶ 15.
[4]  *Id.* ¶ 16.

specifically for suicide prevention.[5] Jail staff segregated her from the rest of the Jail's inmate population, which is an action discouraged for inmates who pose a suicide risk.[6]

Presumably as part of the suicide watch, Jail staff was to check Ms. McAndrew every fifteen minutes to ensure that she had not engaged in self-harm or attempted suicide.[7] Ms. McAndrew was last observed alive by Jail staff on February 10, 2022.[8] Early the next morning, February 11, 2022, Jail staff found Ms. McAndrew unresponsive in her cell with a sheet wrapped around her neck; she had used the sheet to strangle herself.[9] This occurred after Jail staff had failed to monitor Ms. McAndrew for approximately three hours, notwithstanding the directive to check her every fifteen minutes.[10] Ms. McAndrew was later pronounced dead at Geisinger-Shamokin Area Community Hospital.[11] Between the time that Ms. McAndrew's suicide attempt began through the time of her death, she "suffered great personal injury and felt great pain and suffering."[12] Ms. McAndrew's death caused her to lose potential earnings and income, and for Mr. McAndrew to incur expenses related to Ms. McAndrew's burial, funeral, and estate administration.[13]

---

5   *Id.* ¶¶ 23, 33.
6   *Id.* ¶ 32.
7   *Id.* ¶ 24.
8   *Id.* ¶ 25.
9   *Id.* ¶¶ 26-27.
10  *Id.* ¶ 29.
11  *Id.* ¶ 28.
12  *Id.* ¶ 43.
13  *Id.* ¶ 44.

At the time of this incident, the Jail was experiencing a shortage of correctional officers ("COs").[14] Between February 6, 2022 (the date of Ms. McAndrew's detention) and February 11, 2022 (the date of her death), the Jail employed approximately 34 COs.[15] However, during a period of non-shortage and while operating at full capacity, the Jail would typically have 78 COs working on a given day.[16] Commissioners for Northumberland County characterized the Jail's CO shortage as an "emergency."[17]

B.     **Procedural History**

On May 26, 2022, Mr. McAndrew filed suit against Northumberland County as well as the following individual Defendants:

| Name | Relevant Title or Occupation |
|---|---|
| Bruch Kovach | Warden for Northumberland County Jail |
| Samuel J. Schiccatano | Commissioner for Northumberland County |
| Joseph M. Klebon | Commissioner for Northumberland County |
| Kymberley L. Best | Commissioner for Northumberland County |
| James Hoskin | Commissioner for Northumberland County |
| John Does 1-6 | Northumberland County Jail Correctional Officers[18] |

---

[14]    *Id.* ¶ 37.
[15]    *Id.* ¶ 35.
[16]    *Id.* ¶ 34.
[17]    *Id.* ¶ 37.
[18]    *Id.* ¶¶ 6-11.

Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 23, 2022.[19] All briefing deadlines associated with that Motion have expired, and the Motion is now ripe for disposition.[20]

## II. LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following *Bell Atlantic Corp. v. Twombly*[21] and *Ashcroft v. Iqbal*,[22] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[23] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[24]

---

[19] Doc. 7.
[20] *See* Docs. 1, 7-2, 11. Mr. McAndrew filed a brief in opposition to the Motion; Defendants did not file a reply brief.
[21] 550 U.S. 544 (2007).
[22] 556 U.S. 662 (2009).
[23] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[24] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## III. ANALYSIS

Mr. McAndrew's Complaint includes five causes of action: (1) violation of Ms. McAndrew's civil rights under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 (against all Defendants); (2) violation of Ms. McAndrew's Civil Rights pursuant to 42 U.S.C. § 1983 (*Monell* claim for municipal liability) (presumably against all Defendants); (3) medical negligence (against whom Mr. McAndrew has labeled the "Medical Defendants"); (4) a wrongful death action (against all Defendants); and (5) a survival action (against all Defendants).[25]

The focus of this opinion will be the Court's analysis of Mr. McAndrew's Eighth Amendment claim because that is the constitutional violation to which this Court's jurisdiction, as well as additional claims and defenses, are anchored.

### A.   Eighth Amendment Claim

Mr. McAndrew alleges that Defendants violated the Eighth Amendment by demonstrating deliberate indifference to Ms. McAndrew's medical needs.[26] Specifically, Mr. McAndrew alleges that Defendants' failure to "take necessary and available precautions which would have saved his daughter's life, such as housing her in an appropriate unit where she could [have been] properly monitored and treated and provided with the appropriate mental health care, diagnosis and

---

[25]   Doc. 1 ¶¶ 7-73.
[26]   *Id.* ¶ 49.

treatment" constitutes cruel and unusual punishment in violation of the Eighth Amendment.[27] Defendants moved to dismiss this claim, arguing that Mr. McAndrew failed to plead the claim with sufficient factual specificity, and that certain Defendants are protected by the qualified immunity doctrine.[28]

### 1.    Three-Prong Test

As a preliminary matter, the Court will affirmatively analyze this claim under the appropriate standard required for Section 1983 claims arising from jail suicides, noting that all parties in this case failed to address this standard in the briefing.[29] It is established in the Third Circuit that "whether a pre-trial detainee or a convicted prisoner, a plaintiff bringing a claim arising from a jail suicide must show: (1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.[30] To be clear, negligence does not give rise to an Eighth Amendment

---

[27] *Id.* ¶ 50.
[28] Doc. 7-2 at pp. 2-7.
[29] This is not the first time that litigants have failed to analyze a prison suicide claim under the appropriate Third Circuit standard. *See Myers v. Clinton County Corr. Facility*, No. 3:21-867, 2022 U.S. Dist. LEXIS 49314, at *6 (M.D. Pa. Mar. 11, 2022) ("The matter will be remanded for consideration of Plaintiff's Eighth Amendment claim under the appropriate *Colburn II* standard.").
[30] *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017) (analyzing and discussing the legal framework surrounding Eighth Amendment prison suicide cases and synthesizing cases within that framework to create three-prong test operative here); *see Kelley v. Bradford County*, No.

violation.[31] "[A] prison custodian is not a guarantor of a prisoner's safety, and therefore the fact that a suicide took place is not enough on its own to establish that prison officials were recklessly indifferent in failing to take precautions to protect prisoners entrusted to their care."[32]

Beginning with the first prong, the question is whether the Complaint sufficiently pleads facts alleging that Ms. McAndrew had a particular vulnerability to suicide. To satisfy this prong, "a plaintiff must establish that there is a 'strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'"[33] Mr. McAndrew alleges that "Ms. McAndrew was placed on suicide watch in [the Jail] because she was a known drug user," and that "she was to be checked every fifteen minutes due to a concern that she would commit suicide."[34] These facts—particularly that Jail staff decided to place Ms. McAndrew under suicide watch—taken as true and viewed in the light most favorable to Mr. McAndrew, demonstrate

---

3:07-CV-1531, 2010 U.S. Dist. LEXIS 27290, at *13 (M.D. Pa. Mar. 23, 2010) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (internal quotations omitted)); *see also* United States Court of Appeals for the Third Circuit's Model Jury Instruction 4.11.2.

[31] *Kelley*, No. 3:07-CV-1531, 2010 U.S. Dist. LEXIS *17 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot be condemned as the infliction of punishment.")).

[32] *Wargo v. Schuykill County*, 348 F. App'x 756, 759 (3d Cir. 2009) (quoting *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988)).

[33] *Hinton v. United States*, No. 4:14-cv-0854, 2015 U.S. Dist. LEXIS 20455, at *11 (M.D. Pa. Feb. 20, 2015) (citing *Colburn*, 946 F.2d at 1024).

[34] Doc. 1 ¶¶ 23-24. It is an established fact, too, that "problematic substance use is a key factor contributing to suicide[.]" BUREAU OF JUSTICE ASSISTANCE, *Managing Substance Abuse Withdrawal in Jails: A Legal Brief* (February 2022), https://bja.ojp.gov/doc/managing-substance-withdrawal-in-jails.pdf.

that Ms. McAndrew had a particular vulnerability to suicide. The Complaint's allegations satisfy the first prong.

As for the second prong, the question is whether the Complaint sufficiently pleads facts demonstrating that Jail staff knew or should have known of Ms. McAndrew's particular vulnerability to suicide. To satisfy this prong, "the plaintiff must plead facts that show that the strong likelihood of suicide was so obvious that a layperson would easily recognize the necessity for preventative action."[35] "[E]ven where a strong likelihood of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that strong likelihood."[36] It is not necessary that the custodian have a subjective appreciation of the detainee's "particular vulnerability . . . [n]evertheless, there can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide."[37] The Court concludes that the Complaint's allegations satisfy this prong.

As discussed with respect to the first prong, the Complaint alleges that the Jail placed Ms. McAndrew under suicide watch because she was a known drug user and therefore more likely to commit suicide while detoxing from illicit substances. The Jail's decision to classify Ms. McAndrew as a detainee on suicide watch

---

[35] *Hinton*, 2015 U.S. Dist. LEXIS at *13 (citing *Colburn*, 946 F.2d at 1025).
[36] *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (quoting *Colburn*, 946 F.2d at 1024).
[37] *Id*. (quoting *Colburn*, 946 F.2d at 1025) (internal quotations omitted).

demonstrates that the Jail administrators who made that decision had subjective knowledge of Ms. McAndrew's particular vulnerability to suicide, and subjective knowledge satisfies the Third Circuit's standard, which—as discussed above—actually requires less in order for this prong to be satisfied.

Similarly, the COs on duty when Ms. McAndrew committed suicide, who knew or should have known that she was classified as a detainee on suicide watch, presumably had a subjective understanding of Ms. McAndrew's particular vulnerability to suicide; this would seem correct even if they were not present during her intake process when any details about her drug use may have been revealed. The fact that she was presented as a detainee on suicide watch, who was to be monitored more frequently due to the risk that she would commit suicide, attributes to the COs subjective knowledge more culpable than negligent failure to recognize the high risk that Ms. McAndrew would commit suicide. Indeed, courts have found whether a detainee or prisoner had been placed on suicide watch to be a relevant factor in determining knowledge of suicide risk.[38] Because Ms. McAndrew was on suicide

---

[38] *Woloszyn*, 396 F.3d at 317 (considering fact that prisoner not placed on suicide watch as support for finding that defendants had no knowledge of strong likelihood that self-inflicted harm would occur); *see Freitag v. Bucks Cnty.*, No. 2:19-cv-05750, 2022 U.S. Dist. LEXIS 122564, at *19-20 (E.D. Pa. July 12, 2022) (whether prisoner placed on suicide watch relevant to determination of knowledge of vulnerability to suicide); *see also Ferencz v. Medlock*, Civil Action No. 11-1130, 2014 U.S. Dist. LEXIS 92173, at *17-18 (W.D. Pa. July 8, 2014) ("Obviously, a failure to communicate that an inmate was to be on suicide watch would frustrate efforts to prevent that inmate's suicide.").

watch, and the Jail and COs knew or should have known that fact, the Complaint's allegations satisfy this prong.

Finally, with respect to the third prong, the question is whether the Complaint sufficiently pleads facts demonstrating that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability. Reckless indifference "is a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations."[39] Under a "deliberate indifference" standard, even "officials who actually knew of a substantial risk to inmate health and safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."[40] Courts in the Third Circuit have also required a plaintiff to plead causation, which has been stated to be a "causal nexus."[41] "'Because of the nature of the [vulnerability-to-suicide] analysis,' determinations as to whether a plaintiff can establish deliberate indifference or merely negligence in prison suicide cases 'are very fact sensitive.'"[42]

---

[39] *Kedra v. Schroeter*, 876 F.3d 424, 446 (3d Cir. 2007).
[40] *Farmer*, 511 U.S. at 844.
[41] *See Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (listing "causation" as the third element required for a Section 1983 Eighth Amendment claim); *Owens v. City of Philadelphia*, 6 F. Supp. 2d 373, 382-83 (E.D. Pa. 1998); *see Foster v. City of Philadelphia*, No. 01-CV-3810, 2004 U.S. Dist. LEXIS 1302, at *22 (E.D. Pa. Jan. 30, 2004).
[42] *Carlos v. York Cty.*, No. 1:15-CV-1994, 2019 U.S. Dist. LEXIS 211385, at *54 (M.D. Pa. Dec. 9, 2019) (quoting *Estate of Puza v. Carbon County*, 586 F. Supp. 2d 271, 278 (M.D. Pa. 2007)).

Here, following the Third Circuit's reasoning in *Palakovic v. Wetzel*, the Court need not determine whether there is a difference between reckless or deliberate indifference, because it has found that the Complaint fails to sufficiently plead facts demonstrating that Defendants' conduct went beyond mere negligence.[43] Negligence requires: (1) a defendant owing a duty of care to a plaintiff; (2) a breach of that duty; (3) causation; and (4) damages.[44] In the case at bar, it is plausible that Defendants' alleged conduct was negligent—*i.e.*, that they owed a duty of care to Ms. McAndrew and breached that duty of care in not checking on her every fifteen minutes—but it is implausible to find that they were recklessly or deliberately indifferent to the her need.[45]

Assuming that the Complaint's allegations attribute the lapse in monitoring to the fact that the Jail was understaffed, and assuming that Defendants were aware that the CO shortage would lead to such lapses, the facts pleaded in the Complaint still do not allege that Defendants responded unreasonably. Jail staff did monitor Ms.

---

[43] 854 F.3d 209, 224 n.15 (3d Cir. 2017).
[44] *See Martin v. Evans*, 711 A.2d 458, 461 (1998).
[45] *See, e.g., Lawnicazk v. Cty. of Allegheny*, 811 Fed. App'x 743, 746-47 (3d Cir. 2020) (finding that the district court had not erred by finding that correctional officers and nurses had not acted with reckless or deliberate indifference in their treatment of a prisoner who eventually hanged himself in his cell); *Windom v. Wetzel*, No. 3:21-0338, 2022 U.S. Dist. LEXIS 44984, at *9 (M.D. Pa. Mar. 14, 2022) (dismissing Eighth Amendment claim against prison guards, finding that plaintiff failed to sufficiently plead that guards were deliberately indifferent in their handling of an evacuation during a fire); *Schiavone v. Luzerne County*, No. 3:21-CV-01686, 2022 U.S. Dist. LEXIS 140054, at *14-15 (M.D. Pa. Aug. 5, 2022) (denying motion to dismiss Eighth Amendment claim because plaintiff had sufficiently alleged deliberate indifference: defendants had known about plaintiff's mental health issues, previous mental health hospitalizations and past suicidal ideations, and had still ignored her requests for help).

McAndrew, just with longer intervals of time in between each visit—and while the harm (Ms. McAndrew's death) was not ultimately averted, the allegations at most demonstrate that Defendants breached their duty to ensure that Ms. McAndrew was checked on every fifteen minutes. It is not conscience-shocking that a handful of COs could not monitor inmates as closely as a full roster of COs would have been able to during a period when the Jail was fully staffed.

The fact that the County and its Commissioners were aware that the Jail was operating with a CO shortage is also not conscience-shocking standing on its own, though it does raise concerns about the risk of negligence inevitably brought about by such reduced manpower to monitor detainees and inmates. While understaffing is a regrettable bureaucratic reality in jails and prisons in this country, it does not on its own rise to the level of deliberate or reckless indifference. The Complaint as currently drafted asks the Court to find it conscience-shocking, or beyond negligent, that the County continued to operate an understaffed jail. Without more allegations plausibly serving as a "causal nexus" between the County's knowledge of the CO shortage and Ms. McAndrew's suicide, the Court cannot make that leap. While the alleged conduct of Defendants, and certainly the tragic outcome here, are serious, the facts as alleged do not show anything more than negligence.

Because Mr. McAndrew's Complaint fails to sufficiently plead facts demonstrating that Defendants' violated Ms. McAndrew's Eighth Amendment rights, Defendants' Motion to dismiss this claim is granted.

### 2. Qualified Immunity

Even though the Court has already dismissed the Eighth Amendment claim, it will briefly address the issue of qualified immunity. Defendants move to dismiss the Eighth Amendment claim as to Defendants Kovach, Schiccatano, Klebon, Best and Hoskins (the "County Employee Defendants") on the grounds that these Defendants are entitled to qualified immunity.[46] Mr. McAndrew contends that the County Employee Defendants' conduct satisfies the standard required to overcome the protection of qualified immunity.[47]

The qualified immunity doctrine protects government officials from liability for civil damages "in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[48] A Court will consider two prongs to determine whether an official is entitled to qualified immunity: (1) whether the official violated a constitutional right; and (2) whether the right was clearly established.[49] If the answer to both prongs is affirmative, then the officials are not entitled to qualified immunity.

The Court has already determined that the Complaint fails to sufficiently plead that a constitutional violation occurred. Therefore, the answer to the first prong

---

[46] Doc. 7-2 at p. 6.
[47] Doc. 11 at pp. 7-10.
[48] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[49] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part by *Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two prong to address first).

cannot be in the affirmative, and the County Employee Defendants are entitled to qualified immunity. Mr. McAndrew is advised to keep this defense in mind should he choose to amend his Complaint.

### B. Section 1983 Claim (*Monell*)

Mr. McAndrew also brings a claim for municipal liability pursuant to *Monell v. N.Y.C. Department of Social Services* and its progeny.[50] Defendants' Motion presents various arguments as to why this claim should be dismissed as to all Defendants.[51] The Court need not analyze those arguments, however, because it has already established that the Complaint does not sufficiently plead facts demonstrating that a constitutional violation occurred.

A plaintiff asserting a cause of action under Section 1983 must allege: (a) "that some person has deprived [her] of a federal right;" and (b) "that the person who has deprived [her] of that right acted under color of state or territorial law."[52] Municipal liability "only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy."[53]

As discussed above, the Complaint's allegations fail to satisfy the Third Circuit's standard required for Eighth Amendment violations arising from jail suicides. Because it is established that a *Monell* claim cannot proceed in the absence

---

[50] 436 U.S. 658 (1978).
[51] Doc. 7-2 at pp. 7-8.
[52] *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 506-07 (3d Cir. 2009) (internal quotations omitted).
[53] *Id.*

15

of an underlying constitutional violation, Defendants' motion to dismiss this claim is granted.[54]

### C. Remaining State Law Claims (Medical Negligence, Wrongful Death, and Survival Action)

Mr. McAndrew brings three additional claims arising under Pennsylvania state law: (1) medical negligence (Count III); wrongful death (Count IV); and a survival action (Count V).[55] In the event that Mr. McAndrew fails to successfully amend his complaint, the Court will decline to exercise its supplemental jurisdiction governing this issue.[56]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Complaint (Doc. 7-2) is granted and all claims are dismissed without prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[54] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (no *Monell* liability in absence of underlying constitutional violation); *Williams v. Borough of W. Chester*, 891 F.2d 458, 467 (3d Cir. 1989) (same).

[55] Doc. 1.

[56] Additionally, in Pennsylvania, "where no underlying tort has been pled, there can be no wrongful-death or survival action." *McCracken v. Fulton Cnty.*, No. 19-cv-1063, 2020 U.S. Dist. LEXIS 92956, at *27 (M.D. Pa. May 28, 2020) (quoting *Kaczorowski v. Kalkosinski*, 184 A. 663, 664 (Pa. 1936) (additional internal citations and quotations omitted)). Because the Court has found that the Complaint has failed to sufficiently plead its Section 1983 claims, these additional state law claims may not proceed in the absence of a properly-pleaded underlying tort claim.