# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MCANDREW, | No. 4:22-CV-00834 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| NORTHUMBERLAND COUNTY, BRUCE KOVACH, individually and in his official capacity, SAMUEL J. SCHICCATANO, JOSEPH M. KLEBON, KYMBERLY L. BEST, JAMES HOSKIN, and JOHN DOES 1-6, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 21, 2023

This Memorandum Opinion addresses Defendants' Motion to Dismiss the First Amended Complaint brought by a father, Plaintiff Timothy McAndrew ("Mr. McAndrew"), on behalf of his deceased daughter, Meghan McAndrew ("Ms. McAndrew"). Ms. McAndrew died by suicide while detained in Northumberland County Jail (the "Jail"), and her father now brings suit alleging that Ms. McAndrew's death was the result of Defendants' violating her Fourteenth Amendment rights under the United States Constitution. Specifically, he sues Northumberland County itself, the Jail's warden Bruce Kovach, three

Northumberland County Commissioners, and six unnamed Correctional Officers ("COs"), John Does 1-6.

The Amended Complaint does satisfy one hurdle this time around—it sufficiently alleges that Ms. McAndrew suffered a constitutional violation, though it fails to allege the personal involvement of Warden Kovach and the County Commissioners. And while the allegations satisfy the first prong required by *Monell* and its progeny, they fall short of demonstrating a policy of inaction. Litigants bringing suit against a municipality should be armed with precise, well-crafted allegations, and those allegations were nonexistent here. Mr. McAndrew will have one final opportunity to re-plead his allegations against Northumberland County and John Does 1-6, though he will not be permitted to bring any more claims against Warden Kovach or the County Commissioners. For the reasons stated below, Defendants' Motion is granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    The Intake Process and Suicide Watch Protocol

Mr. McAndrew is the father of the deceased Ms. McAndrew.[2] On February 6, 2022, pursuant to a bench warrant, Ms. McAndrew was taken into custody and housed at the Jail.[3] Ms. McAndrew was a known drug user with a history of drug

---

[1]    Facts set forth in this section are stated as they have been alleged in the Amended Complaint (Doc. 20).

[2]    Doc. 20 ¶ 2.

[3]    *Id.* ¶ 15.

offenses in Northumberland County, including pending drug charges at the time she was apprehended and taken to the Jail.[4] Upon intake, Ms. McAndrew informed Jail staff that she was an addict who had used drugs on the day of her arrest.[5] She was then placed on suicide watch due to the likelihood she would be "detoxing" from illicit substances during the early stages of her incarceration.[6]

Ms. McAndrew also informed Jail staff that she had mental health issues, had previously attempted suicide and been hospitalized in a psychiatric facility, and had been diagnosed—and prescribed medications to treat—depression and anxiety.[7] Because Ms. McAndrew was on suicide watch, she was to be placed in a cell with only a low bunk and to be checked on every fifteen (15) minutes by Jail staff to ensure that she had not engaged in self-harm or attempted suicide.[8] Jail staff placed her instead in a room with a top and bottom bunk.[9]

### B.    Ms. McAndrew's Suicide

Ms. McAndrew was last observed alive by Jail staff on February 11, 2022 at 9:26 a.m.[10] At 11:52 a.m. on the same day, other inmates alerted a CO that "something was wrong" with Ms. McAndrew.[11] Jail staff then found Ms. McAndrew

---

[4]   *Id.* ¶¶ 16-17, 21.
[5]   *Id.* ¶ 20.
[6]   *Id.* at ¶ 17.
[7]   *Id.* at ¶¶ 24-26.
[8]   *Id.* at ¶ 21.
[9]   *Id.* at ¶ 22.
[10]  *Id.* ¶¶ 43-44.
[11]  *Id.* ¶ 44.

unresponsive in her cell with a sheet wrapped around her neck; she had used the sheet to strangle herself.[12] This occurred after Jail staff had failed to monitor Ms. McAndrew for over two hours, notwithstanding the directive to check her every fifteen minutes.[13] Ms. McAndrew was later pronounced dead at Geisinger-Shamokin Area Community Hospital.[14] Between the time that Ms. McAndrew's suicide attempt began through the time of her death, she "suffered great personal injury and felt great pain and suffering."[15] Ms. McAndrew's death caused her to lose potential earnings and income, and for Mr. McAndrew to incur expenses related to Ms. McAndrew's burial, funeral, and estate administration.[16]

At the time of this incident, the Jail was experiencing a shortage of correctional officers ("COs").[17] Between February 6, 2022 (the date of Ms. McAndrew's detention) and February 11, 2022 (the date of her death), the Jail employed approximately 34 COs.[18] However, during a period of non-shortage and while operating at full capacity, the Jail would typically have 78 COs working on a given day.[19] Commissioners for Northumberland County characterized the Jail's CO shortage as an "emergency."[20]

---

12 *Id*. ¶ 46.
13 *Id*. ¶ 45.
14 *Id*. ¶ 47.
15 *Id*. ¶ 61.
16 *Id*. ¶ 62.
17 *Id*. ¶¶ 51-52.
18 *Id*. ¶ 52.
19 *Id*. ¶ 51.
20 *Id*. ¶ 54.

## C.    Procedural History

Mr. McAndrew filed his first Complaint on May 6, 2022.[21] Defendants filed a motion to dismiss, which the Court granted on January 25, 2023, dismissing Mr. McAndrew's claims without prejudice.[22] Mr. McAndrew filed the Amended Complaint on February 7, 2023, against Northumberland County as well as the following individual Defendants:

| Name | Relevant Title or Occupation |
|---|---|
| Bruch Kovach (official and individual capacities) | Warden for Northumberland County Jail |
| Samuel J. Schiccatano | Commissioner for Northumberland County |
| Joseph M. Klebon | Commissioner for Northumberland County |
| Kymberley L. Best | Commissioner for Northumberland County |
| James Hoskin | Commissioner for Northumberland County |
| John Does 1-6 | Northumberland County Jail Correctional Officers[23] |

Defendants again filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 17, 2023.[24] All briefing deadlines associated with that Motion have expired, and the Motion is now ripe for disposition.[25]

---

[21]  Doc. 1.
[22]  Docs. 7, 19.
[23]  Doc. 20.
[24]  Doc. 21.
[25]  *See* Docs. 21, 22, 28. Mr. McAndrew filed a brief in opposition to the Motion; Defendants did not file a reply brief.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following *Bell Atlantic Corp. v. Twombly*[26] and *Ashcroft v. Iqbal*,[27] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[29]

## III.   ANALYSIS

The Amended Complaint asserts five causes of action: (1) violation of Ms. McAndrew's civil rights under the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 (against all Defendants); (2) medical negligence (against whom Mr. McAndrew has labeled the "Medical Defendants"); (3) violation of Ms. McAndrew's Civil Rights pursuant to 42 U.S.C.

---

[26]   550 U.S. 544 (2007).
[27]   556 U.S. 662 (2009).
[28]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[29]   *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

§ 1983 (*Monell* claim for municipal liability) (presumably against all Defendants); (4) a wrongful death action (against all Defendants); and (5) a survival action (against all Defendants).[30]

### A.    Fourteenth Amendment Claim[31]

Mr. McAndrew alleges that Defendants violated the Fourteenth Amendment by demonstrating deliberate indifference to Ms. McAndrew's medical needs.[32] Specifically, Mr. McAndrew alleges that Defendants' failure to "take necessary and available precautions which would have saved his daughter's life, such as housing her in an appropriate unit where she could [have been] properly monitored and treated and provided with the appropriate mental health care, diagnosis and treatment" constitutes cruel and unusual punishment in violation of the Fourteenth Amendment.[33] Defendants moved to dismiss this claim, arguing that Mr. McAndrew failed to plead the claim with sufficient factual specificity, and that certain Defendants are protected by the qualified immunity doctrine.[34]

### 1.    Three-Prong Test

It is established in the Third Circuit that "whether a pre-trial detainee or a convicted prisoner, a plaintiff bringing a claim arising from a jail suicide must show:

---

[30]   Doc. 20 ¶¶ 76-102.
[31]   Because Ms. McAndrew was a pretrial detainee, her rights are governed by the Fourteenth Amendment rather than the Eighth Amendment (which only applies after an individual has been convicted of an offense). *See Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017).
[32]   *Id.* ¶ 49.
[33]   *Id.* ¶ 50.
[34]   Doc. 22 at pp. 5-13.

(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.[35] To be clear, negligence does not give rise to a Fourteenth Amendment violation.[36] "[A] prison custodian is not a guarantor of a prisoner's safety, and therefore the fact that a suicide took place is not enough on its own to establish that prison officials were recklessly indifferent in failing to take precautions to protect prisoners entrusted to their care."[37]

Beginning with the first prong, the question is whether the Complaint sufficiently pleads facts alleging that Ms. McAndrew had a particular vulnerability to suicide. To satisfy this prong, "a plaintiff must establish that there is a 'strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'"[38] Mr.

---

[35] *Palakovic*, 854 F.3d at 223-24 (analyzing and discussing the legal framework surrounding Eighth Amendment prison suicide cases and synthesizing cases within that framework to create three-prong test operative here); *see Kelley v. Bradford Cnty.*, No. 3:07-CV-1531, 2010 U.S. Dist. LEXIS 27290, at *13 (M.D. Pa. Mar. 23, 2010) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (internal quotations omitted)); *see also* United States Court of Appeals for the Third Circuit's Model Jury Instruction 4.11.2.

[36] *Kelley*, No. 3:07-CV-1531, 2010 U.S. Dist. LEXIS *17 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot be condemned as the infliction of punishment.")).

[37] *Wargo v. Schuylkill Cnty.*, 348 F. App'x 756, 759 (3d Cir. 2009) (quoting *Freedman v. Cty. of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988)).

[38] *Hinton v. United States*, No. 4:14-cv-0854, 2015 U.S. Dist. LEXIS 20455, at *11 (M.D. Pa. Feb. 20, 2015) (citing *Colburn*, 946 F.2d at 1024).

McAndrew alleges that Ms. McAndrew was placed on suicide watch in the Jail because she was a known drug user, and that she was to be checked every fifteen minutes and placed in a room without a top bunk due to a concern that she would commit suicide.[39] These facts—particularly that Jail staff decided to officially place Ms. McAndrew under suicide watch—taken as true and viewed in the light most favorable to Mr. McAndrew, demonstrate that Ms. McAndrew had a particular vulnerability to suicide. The Amended Complaint's allegations satisfy the first prong.

As for the second prong, the question is whether the Amended Complaint sufficiently pleads facts demonstrating that Jail staff knew or should have known of Ms. McAndrew's particular vulnerability to suicide. To satisfy this prong, "the plaintiff must plead facts that show that the strong likelihood of suicide was so obvious that a layperson would easily recognize the necessity for preventative action."[40] "[E]ven where a strong likelihood of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that strong likelihood."[41] It is not necessary that the custodian have a subjective appreciation of the detainee's "particular vulnerability . . . [n]evertheless, there can be no reckless or deliberate

---

[39]  Doc. 1 ¶¶ 23-24. It is an established fact, too, that "problematic substance use is a key factor contributing to suicide[.]" BUREAU OF JUSTICE ASSISTANCE, *Managing Substance Abuse Withdrawal in Jails: A Legal Brief* (February 2022), https://bja.ojp.gov/doc/managing-substance-withdrawal-in-jails.pdf.

[40]  *Hinton*, 2015 U.S. Dist. LEXIS at *13 (citing *Colburn*, 946 F.2d at 1025).

[41]  *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (quoting *Colburn*, 946 F.2d at 1024).

indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide."[42] The Amended Complaint's allegations satisfy this prong.

As discussed with respect to the first prong, the Amended Complaint alleges that the Jail placed Ms. McAndrew under suicide watch because she was a known drug user and therefore more likely to commit suicide while detoxing from illicit substances. The Jail's decision to classify Ms. McAndrew as a detainee on suicide watch demonstrates that the Jail administrators who made that decision had subjective knowledge of Ms. McAndrew's particular vulnerability to suicide, and subjective knowledge satisfies the Third Circuit's standard, which—as discussed above—actually requires less in order for this prong to be satisfied.

Similarly, the COs on duty when Ms. McAndrew committed suicide, who knew or should have known that she was classified as a detainee on suicide watch, presumably had a subjective understanding of Ms. McAndrew's particular vulnerability to suicide; this would seem correct even if they were not present during her intake process when any details about her drug use may have been revealed. The fact that she was presented as a detainee on suicide watch, who was to be monitored more frequently due to the risk that she would commit suicide, attributes to the COs subjective knowledge more culpable than negligent failure to recognize the high risk

---

[42]   *Id*. (quoting *Colburn*, 946 F.2d at 1025) (internal quotations omitted).

that Ms. McAndrew would commit suicide. Indeed, courts have found whether a detainee or prisoner had been placed on suicide watch to be a relevant factor in determining knowledge of suicide risk.[43] Because Ms. McAndrew was on suicide watch, and the Jail and COs knew or should have known that fact, the Amended Complaint's allegations satisfy this prong.

Finally, with respect to the third prong, the question is whether the Amended Complaint sufficiently pleads facts demonstrating that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability. Reckless indifference "is a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations."[44] Under a "deliberate indifference" standard, something "more than negligence" to the individual's particular vulnerability is required.[45] Courts in the Third Circuit have also required a plaintiff to plead causation, which has been stated to be a "causal nexus."[46] "'Because of the nature of

---

[43] *Woloszyn*, 396 F.3d at 317 (considering fact that prisoner not placed on suicide watch as support for finding that defendants had no knowledge of strong likelihood that self-inflicted harm would occur); *see Freitag v. Bucks Cnty.*, No. 2:19-cv-05750, 2022 U.S. Dist. LEXIS 122564, at *19-20 (E.D. Pa. July 12, 2022) (whether prisoner placed on suicide watch relevant to determination of knowledge of vulnerability to suicide); *see also Ferencz v. Medlock*, Civil Action No. 11-1130, 2014 U.S. Dist. LEXIS 92173, at *17-18 (W.D. Pa. July 8, 2014) ("Obviously, a failure to communicate that an inmate was to be on suicide watch would frustrate efforts to prevent that inmate's suicide.").

[44] *Kedra v. Schroeter*, 876 F.3d 424, 446 (3d Cir. 2007).

[45] *Palakovic*, 854 F.3d at 223-24.

[46] *See Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (listing "causation" as the third element required for a Section 1983 Eighth Amendment claim); *Owens v. Cty. of Phila.*, 6 F. Supp. 2d 373, 382-83 (E.D. Pa. 1998); *see Foster v. Cty. of Phila.*, No. 01-CV-3810, 2004 U.S. Dist. LEXIS 1302, at *22 (E.D. Pa. Jan. 30, 2004).

the [vulnerability-to-suicide] analysis,' determinations as to whether a plaintiff can establish deliberate indifference or merely negligence in prison suicide cases 'are very fact sensitive.'"[47]

The Amended Complaint's allegations satisfy this prong and demonstrate reckless or deliberate indifference that exceeds negligence. The following facts lead the Court to this conclusion: (1) The Jail placed Ms. McAndrew on suicide watch, which meant that she was to be placed in a cell with only a low bunk and to be checked on every 15 minutes;[48] (2) Ms. McAndrew was placed in a cell with a top bunk;[49] (3) The Jail failed to check on Ms. McAndrew at 9:45 a.m., 10:00 a.m., 10:15 a.m., 10:30 a.m., 10:45 a.m., 11:00 a.m., 11:15 a.m., 11:30 a.m., and 11:45 a.m. on the day of her suicide;[50] and (4) During the time she was unsupervised, Ms. McAndrew fashioned her bedsheet into a noose and hanged herself from the top bunk.[51]

The Court previously found that understaffing alone does not give rise to reckless or deliberate indifference, and that reasoning stands.[52] However, the facts about the Jail's failure to place Ms. McAndrew in a room without a top bunk— despite the alleged directive to do so—shock the Court's conscience. Indeed, this

---

[47] *Carlos v. York Cty.*, No. 1:15-CV-1994, 2019 U.S. Dist. LEXIS 211385, at *54 (M.D. Pa. Dec. 9, 2019) (quoting *Estate of Puza v. Carbon Cnty.*, 586 F. Supp. 2d 271, 278 (M.D. Pa. 2007)).
[48] Doc. 20 ¶ 21.
[49] Doc. 20 ¶ 22.
[50] Doc. 20 ¶ 45.
[51] Doc. 20 ¶ 46.
[52] *See* Doc. 18.

Court has found deliberate indifference when a county failed to ensure that an at-risk inmate was even placed on suicide watch.[53] Here, it is alleged that the County and COs *knew* Ms. McAndrew was at risk of committing suicide, and nonetheless placed her in a room with a top bunk. Mr. McAndrew sufficiently satisfies the causation requirement, as Jail staff's decision to place Ms. McAndrew in the wrong kind of room gave her access to the fixture that she used to facilitate her suicide. Because the Amended Complaint's allegations satisfy all three prongs, the Court finds that Mr. McAndrew has sufficiently alleged a constitutional violation of Ms. McAndrew's Fourteenth Amendment rights.

>    **2.    Personal Involvement of Warden Kovach and the County Commissioners**

Defendants' Motion argues that the Amended Complaint fails to allege that that Warden Kovach and the County Commissioners were not personally involved in the constitutional violation that harmed Ms. McAndrew.[54] Mr. McAndrew argues that he has satisfied his minimal burden to provide a "short and plain" statement of the claims against Defendants.[55] The Court agrees with Defendants.

The Third Circuit has found that "a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor

---

[53] *See Redclift v. Schuylkill Cnty.*, No. 4:21-CV-1866, 2022 U.S. Dist. LEXIS 157687, at *16 (M.D. Pa. Aug. 31, 2022).

[54] Doc. at p. 14.

[55] Doc. 28 at p. 8.

approved."[56] Personal involvement can be shown through facts alleging "personal direction of or actual knowledge and acquiescence."[57] Allegations of personal involvement must allege particular information such as "conduct, time, place, and persons responsible."[58] Further, "[a] plaintiff may not allege that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor."[59]

Here, the Amended Complaint is bereft of any facts assigning personal involvement to Warden Kovach and the County Commissioners. Indeed, the Amended Complaint's most promising allegations relate to conduct by the "Jail" and the Jail's "staff," "personnel," and "COs."[60] Mr. McAndrew provides no particulars—such as conduct, time, place—about how Warden Kovach and the County Commissioners were *personally* involved in bringing about Ms. suicide. At most, the Court can surmise that Mr. McAndrew means to hold them responsible as supervisors of the Jail's staff, personnel, and COs. As discussed above, bare allegations of supervisory involvement are not enough to demonstrate personal involvement.

Because Mr. McAndrew has failed to sufficiently demonstrate the personal involvement of Warden Kovach and the County Commissioners, Defendants'

---

[56] *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted).
[57] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).
[58] *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005).
[59] *Broadwater v. Fow*, 945 F. Supp. 547, 58 (M.D. Pa. 2013) (internal citations omitted).
[60] *See, e.g.*, Doc. 20 ¶¶ 17, 45, 50

Motion is granted and the claims against these Defendants in their individual capacities are dismissed with prejudice.[61]

### 3.    Qualified Immunity

Defendants move to dismiss the Fourteenth Amendment claim against Warden Kovach and the County Commissioners on the basis these Defendants are entitled to qualified immunity.[62] Because the Court has already dismissed the claims against these Defendants on other grounds, it declines to address this argument.

### B.    Section 1983 Claim (*Monell*)

Mr. McAndrew also brings a claim for municipal liability pursuant to *Monell v. N.Y.C. Department of Social Services* and its progeny.[63] Defendants' Motion presents various arguments as to why this claim should be dismissed as to all Defendants.[64] As a preliminary matter, Defendants argue that the claim against Warden Kovach in his official capacity is duplicative of the claim against Northumberland County and should be dismissed on those grounds.[65] Defendants are correct on this point, and their Motion is granted as to that claim.[66]

---

[61]  The Court dismisses these claims with prejudice because Mr. McAndrew has now had two opportunities to bring claims against these individuals, and the Court does not anticipate that further pleading could cure this defect.

[62]  Doc. 22 at p. 7.

[63]  436 U.S. 658 (1978).

[64]  Doc. 22 at pp. 13-19.

[65]  *See* Doc. 22 at p. 13.

[66]  *See Rankin v. Majikes*, No. 3:14-cv-699, 2014 U.S. Dist. LEXIS 169185, at *16-17 (M.D. Pa. Dec. 5, 2014). Because this is Mr. McAndrew's second opportunity to bring this claim, and because the Court does not believe he can re-plead it in a manner where it would not be duplicative of the claims against Northumberland County, it is dismissed with prejudice. The Court also notes that the Amended Complaint's caption does not specify whether Defendants

A plaintiff asserting a cause of action under Section 1983 must allege: (1) "that some person has deprived [her] of a federal right;" and (2) "that the person who has deprived [her] of that right acted under color of state or territorial law."[67] In the Third Circuit, it is established that *Monell v. N.Y.C. Department of Social Services*[68] "sets forth the test to determine if municipalities, not individuals, can be held liable under § 1983."[69] "Municipalities and other local government entities," such as Northumberland County, "are 'persons' for purposes of Section 1983 liability."[70] Municipal liability "only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy."[71] Under *Monell*, a plaintiff must "identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered."[72]

A policy exists "when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation,

---

Schiccatano, Klebon, Best, and Hoskin are named in their individual or official capacities. Because Defendant Kovach is the only Defendant listed as "individually and in his official capacity," the Court assumes that the other Defendants are named in their individual, not official, capacities. However, if Plaintiff did intend to name the County Commissioners in their official capacities, then their claims are also dismissed, with prejudice, as duplicative of the claim against the County.

[67] *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 506-07 (3d Cir. 2009) (internal quotations omitted).

[68] 436 U.S. 658 (1978).

[69] *Lepre v. Lucas*, 602 Fed. App'x 864, 869 n.4 (3d Cir. 2005) (per curiam).

[70] *Loomis v. Montrose Borough Police Dep't*, 2021 U.S. Dist. LEXIS 126980, at *8 (M.D. Pa. July 8, 2021) (citing *Monell*, 436 U.S. at 690).

[71] *Id.*

[72] *Id.* (internal citations omitted).

policy, or edict."[73] A custom "is an act that is not formally approved but is nonetheless 'so widespread as to have the force of law.'"[74] A plaintiff may also establish municipal liability by demonstrating that "a policymaker failed to take affirmative action despite an obvious need to correct the 'inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights' that inaction exhibits 'deliberate indifference' to the need"—often referred to as the "deliberate indifference" standard.[75] A municipality exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action."[76]

The Third Circuit has elaborated on this standard, stating that "a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [when] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[77]

In those circumstances, the municipal actor is determined to have adopted a "policy of inaction" where "the government's failure to act amounts to deliberate indifference towards the plaintiff's constitutional rights."[78] However, the Supreme

---

[73]   *Id.* (internal citations omitted).
[74]   *Id.* (internal citations omitted).
[75]   *Id.* at *8-9 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).
[76]   *Id.* at *9 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[77]   *Forshey v. Huntingdon Cnty.*, 2015 U.S. Dist. LEXIS 117777, at *9 (M.D. Pa. Aug. 10, 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003)).
[78]   *Id.*

Court of the United States has established that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a policymaker."[79]

Notwithstanding the Supreme Court's general rule, it is possible—though challenging—for a plaintiff to demonstrate a policy or custom via deliberate indifference in a single incident of unconstitutional conduct. This is only available to a plaintiff "in a very narrow range of circumstances," where the "risk of injury must be a highly predictable consequence of the municipality's failure to train and supervise its employees."[80] "Even if that showing can be made, the plaintiff still must demonstrate that the failure to train proximately caused [her] constitutional injury by identifying a particular failure in a training program that is closely related to the ultimate injury."[81] Ultimately, when asserting a single-incident *Monell* claim, "it is incumbent upon the plaintiff to assert well-pleaded facts which permit a finding of deliberate indifference grounded upon a risk of injury that must be a 'highly predictable consequence' of the municipality's failure to train and supervise its employees."[82]

---

[79]   *Id*. (quoting *Oklahoma Cty. v. Tuttle*, 471 U.S. 808, 823-24) (1985)); *see also Brown v. Cty. of Pittsburgh*, 586 F.3d 263, 292-93 (3d. Cir. 2009).

[80]   *Santiago v. Cty. of Harrisburg*, 2020 U.S. Dist. LEXIS 50359, at *28-29 (M.D. Pa. March 20, 2020) (internal citations and quotations omitted).

[81]   *Id*. at *29.

[82]   *Id*. (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 225 (3d. Cir. 2014) (quoting *Connick*, 563 U.S. at 63-64)).

Because the Court has already dismissed the claims against Warden Kovach and the County Commissioners, the Court will only address the *Monell* claim as it applies to Northumberland County and John Does 1-6. The Amended Complaint's *Monell* allegations summarily state that the County's "deliberate indifference" caused the violation of Ms. McAndrew's Fourteenth Amendment rights. Specifically, Mr. McAndrew alleges that the County knew that the Jail was understaffed and of the need to improve "training, supervision, investigation, monitoring, discipline, [and] policies and procedures."[83]

In their Motion, Defendants argue that the Amended Complaint fails to plead facts evincing a policy or custom as required by *Monell*.[84] They also argue that Mr. McAndrew has not alleged a pattern of constructional violations that "were so obvious that the conduct can only be characterized as deliberately indifferent."[85] Mr. McAndrew argues that the Amended Complaint's allegations are sufficient, pointing to the facts that the Jail was understaffed, and that another inmate—Sean Beers— had committed suicide a few months before Ms. McAndrew's death.[86] The Court agrees with Defendants.

The allegations set forth in the Amended Complaint do not meet *Monell*'s exacting standard, though they do get closer than they did in the previous complaint.

---

[83] Doc. 20 ¶¶ 90-93.
[84] Doc. 22 at pp. 15-19.
[85] *Id*. at p. 18.
[86] *Id*. at pp. 18-24.

This time, as discussed above, Mr. McAndrew *has* demonstrated that Northumberland County and John Does 1-6 violated Ms. McAndrew's Fourteenth Amendment rights, so the first prong of *Monell* is satisfied. However, the Amended Complaint fails to demonstrate a policy of inaction via the single incident alleged.

In broad strokes, Mr. McAndrew states that the County and/or John Does 1-6 are responsible for Ms. McAndrew's death because they: (1) knew the Jail was understaffed and allowed it to operate anyway; (2) failed to train Jail staff about how to handle inmates at risk of committing suicide; and (3) failed to adopt policies and procedures after Mr. Beers' suicide.[87] Reading the Amended Complaint in the light most favorable to Mr. McAndrew, the Court finds the most viable *Monell* theory to come from these allegations would have to be a single-incident failure-to-train claim, the standard for which was discussed above.[88] And the allegations are too bare to satisfy that standard.

Deliberate indifference via a single incident requires a plaintiff to allege that "the risk of injury must be a highly predictable consequence of the municipality's failure to train and supervise its employees."[89] Mr. McAndrew's allegations satisfy this first hurdle. In a jail as shockingly understaffed as Northumberland County's, it

---

[87] *Id.*

[88] The allegations only cite to one prior suicide in the Jail (Mr. Beers' suicide), which is not sufficient to demonstrate a "pattern" for *Monell* purposes. *See Waugaman v. City of Greenburg*, No. 2:17-330, 2019 U.S. Dist. LEXIS 95887, at *38 (W.D. Pa. June 7, 2019) (finding that one prior allegation of a constitutional violation did not present a "pattern").

[89] *Santiago*, 2020 U.S. Dist. LEXIS at *28-29 (internal citations and quotations omitted).

is highly predictable that inmates on suicide watch may be neglected. Indeed, the Amended Complaint alleges that, after ignoring Ms. McAndrew for hours, COs were not even the ones to find that she had taken her life. Ms. McAndrew's fellow inmates noticed something was wrong and had to alert the Jail staff. The facts do not allege that John Does 1-6 checked on her 15 minutes, 30 minutes, or one hour later than required—they allege that the COs completely abandoned an at-risk inmate for hours when she most required supervision.

But this is not the end of the inquiry. The allegations must also demonstrate that this failure violated Ms. McAndrew's Fourteenth Amendment rights by identifying *a particular failure in a training program* that is closely related to her suicide.[90] This is where the Amended Complaint falls short.

Because this standard is so high, it is inappropriate for the Court to make assumptions about foundational facts such as: (1) what training protocols may or may not be in place at the Jail; (2) the role the County plays in adopting and implementing those policies; (3) the job description and duties of COs at the Jail; and/or (3) statistics about how many suicides have occurred at the Jail over a given period of time. These facts must be pled by Mr. McAndrew, and while the Amended Complaint alluded to them, they lack the requisite particularity. Had Mr. McAndrew cited the investigative report of Ms. McAndrew's suicide (if such a report exists and

---

[90] *Id.*

is available) against the suicide prevention policies and protocols for the Jail (if such policies and protocols exists and are available), perhaps the Court would have had more concrete facts to analyze under the *Monell* standard.  That did not happen here, and the Court may not engage in factual gap-filling.

This is a challenging claim to bring; it must include particular allegations that may require a plaintiff (under these circumstances) to conduct research and obtain publicly available information from the County and Jail. The Court is not stating that such information would automatically revive this claim, but Mr. McAndrew should bear this in mind should he choose to bring this claim a final time.[91] That said, because Mr. McAndrew's allegations fail to demonstrate a policy or custom under *Monell*, Defendants' Motion is granted.

### C.   Remaining State Law Claims (Medical Negligence, Wrongful Death, and Survival Action)

Mr. McAndrew brings three additional claims arising under Pennsylvania state law: (1) medical negligence (Count II); (2) wrongful death (Count IV); and (3) a survival action (Count V).[92] In the event that Mr. McAndrew fails to successfully amend his complaint, the Court will decline to exercise its supplemental jurisdiction governing this issue.

---

[91]   And he will only be given one final opportunity to re-plead the claims against Northumberland County and John Does 1-6.

[92]   Doc. 20.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Complaint

(Doc. 21) is granted.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge